COOLEY LLP
ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
Two California Plaza
350 S. Grand Ave., Suite 3200
Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

MICHELLE L. ROGERS (*pro hac vice*)
(mrogers@cooley.com)
ELIAS S. KIM (*pro hac vice*)
(ekim@cooley.com)
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

TYLER PRICE (*pro hac vice*)
(tprice@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

*Counsel for Defendant loanDepot.com, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| WEST CAPITAL LENDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> LOANDEPOT.COM, LLC, <br><br> Defendant. | Case No. 8:26-cv-00522-JDE <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> Date: August 6, 2026 <br> Time: 10:00 a.m. <br> Dept: Courtroom 6A, 6th Floor <br> Judge: Hon. John D. Early |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.      WCL's Standing Arguments Fail.............................................................................. 1

        A.      WCL Cannot Establish Economic Injury.................................................... 2

        B.      WCL Fails to Establish Causation ............................................................. 4

        C.      WCL Fails to Demonstrate a Risk of Imminent Future Harm ................... 5

II.     WCL's UCL Arguments Fail.................................................................................... 6

        A.      The LO Comp Rule Precludes WCL's UCL Suit ....................................... 6

        B.      WCL Fails to Plead an Unlawful-Prong Claim.......................................... 7

        C.      WCL Fails to Plead an Unfair-Prong Claim .............................................. 9

III.    WCL Drops Its Standalone Declaratory Judgment Claim ..................................... 10

CONCLUSION .................................................................................................................... 10

CERTIFICATE OF COMPLIANCE ................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AngioScore, Inc. v. TriReme Med., LLC,*
70 F. Supp. 3d 951 (N.D. Cal. 2014) ................................................................. 3

*Barr Lab'ys, Inc. v. Abbott Lab'ys,*
978 F.2d 98 (3d Cir. 1992) ................................................................................. 5

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993) ..................................................................................... 5, 10

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.,*
14 Cal. 5th 1075 (2023) ..................................................................................... 2

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ....................................................................................... 3

*Chavez v. Whirlpool Corp.,*
93 Cal. App. 4th 363 (2001) .............................................................................. 9

*Evans v. Rudy-Luther Toyota, Inc.,*
39 F. Supp. 2d 1177 (D. Minn. 1999) ............................................................... 9

*Fid. Mortg. Corp. v. Seattle Times Co.,*
213 F.R.D. 573 (W.D. Wash. 2003) .................................................................. 9

*Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of San Francisco,*
114 Cal. App. 4th 309 (2003) ............................................................................ 4

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.,*
531 F.3d 767 (9th Cir. 2008) ............................................................................. 2

*Howard v. Roman Catholic Archbishop of Los Angeles,*
2026 WL 222258 (Cal. Ct. App. Jan. 28, 2026) ............................................... 2

*Ivanoff v. Bank of Am., N.A.,*
9 Cal. App. 5th 719 (2017) ................................................................................ 7

*Johnson v. LoanDepot.com, LLC,*
2026 WL 1529336 (D. Md. June 1, 2026) .................................................. 7, 11

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) ....................................................................................... 2

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.,*
214 Cal. App. 4th 544 (2013) ............................................................................ 3

*Levitan v. McCoy,*
2001 WL 1117279 (N.D. Ill. Sept. 21, 2001) ................................................... 9

*Lopez v. Stages of Beauty, LLC,*
307 F. Supp. 3d 1058 (S.D. Cal. 2018) ............................................................. 3

*Maxwell v. Union Fid. Mortg., Inc.,*
2009 WL 426189 (E.D. Cal. Feb. 19, 2009) ..................................................... 9

REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Moement, Inc. v. Groomore, Inc.*,
2022 WL 18284405 (C.D. Cal. Nov. 29, 2022)........................................................ 3

*Mortensen v. Home Loan Ctr., Inc.*,
2009 WL 113483 (D. Ariz. Jan. 16, 2009).............................................................. 7

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
165 F. Supp. 3d 937 (S.D. Cal. 2016) .................................................................... 3

*Pac. Steel Grp. v. Com. Metals Co.*,
600 F. Supp. 3d 1056 (N.D. Cal. 2022) ................................................................. 4

*Roberson v. Pocker*,
2024 WL 2984026 (C.D. Cal. Apr. 3, 2024) ......................................................... 2

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010)............................................................................. 7, 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................................... 2

*Staley v. Americorp Credit Corp.*,
164 F. Supp. 2d 578 (D. Md. 2001) ....................................................................... 9

*Swanagan v. Al Piemonte Ford Sales, Inc.*,
1995 WL 493480 (N.D. Ill. Aug. 15, 1995)........................................................... 9

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009)............................................................................... 7

*Velazquez v. GMAC Mortg. Corp.*,
605 F. Supp. 2d 1049 (C.D. Cal. 2008).................................................................. 7

*Wright v. Serv. Emps. Int'l Union Loc. 503*,
48 F.4th 1112 (9th Cir. 2022)............................................................................. 5, 6

*Yoshimoto v. Alaska Airlines, Inc.*,
2026 WL 1121960 (D. Haw. Apr. 24, 2026) .......................................................... 6

*Zhang v. Super. Ct.*,
57 Cal. 4th 364 (2013) ........................................................................................... 7

**Statutes and Regulations**

15 U.S.C.
§ 1639b(c)(1)........................................................................................................... 4
§ 1640(a)(4)............................................................................................................. 7

12 C.F.R. 1026, Supp. I, Part 3 ............................................................................. 4, 8

**Other**

Phillip Areeda & Donald Turner, *Predatory Pricing and Related Practices Under
Section 2 of the Sherman Act*, 88 Harv. L. Rev. 697 (1975)......................................... 10

**REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT**

## INTRODUCTION

WCL's opposition brief makes plain what its Complaint suggests: WCL's suit is about the LO Comp Rule, not the UCL. The core of the brief is a lengthy summary of declarations provided by disgruntled former loanDepot employees (all of whom now work at WCL) asserting that they may have observed violations of the LO Comp Rule. But most of those individuals never worked as production managers and those who did left the position over four years ago. In any event, the LO Comp Rule was enacted to protect consumers; it does not allow a broker, like WCL, to press (meritless) claims against a competitor.

WCL's attempt to smuggle its business grievance via a consumer protection claim under the guise of the UCL is unpersuasive. At the threshold, WCL lacks standing. It has suffered no harm, much less economic harm as required by the UCL. Indeed, WCL has dropped its request for monetary relief—leaving only a forward-looking demand for injunctive and declaratory relief. Yet WCL has not come close to establishing a risk of ongoing, imminent harm.

On the merits, WCL has no response to the fundamental point that the LO Comp Rule precludes competitors from bringing claims under the Rule. And even if such claims were allowed, WCL fails to plead a violation of the Rule. Nor does WCL offer any well-pled facts suggesting an incipient antitrust violation as required for an unfair-prong claim.

This Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.    WCL's Standing Arguments Fail

WCL has withdrawn its request for restitution, and now seeks only forward-looking injunctive and declaratory relief. Opp. 21 n.2.[1] That decision raises the bar: WCL must demonstrate a "real and immediate threat" that loanDepot will engage in

---

[1] "Opp." refers to WCL's Opposition, ECF No. 25; "¶" refers to the Complaint, ECF No. 1; "Ex." refers to the exhibits appended to the Complaint; emphasis is added, and internal citations, quotation marks, and alterations are omitted.

**REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT**

conduct that injures WCL. *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 773 (9th Cir. 2008). And WCL must show that it has suffered a recognized form of "economic injury" as required by the UCL. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011). It has not come close.

### A.   WCL Cannot Establish Economic Injury

WCL's purported injury is lost "market share" based on the contention that loanDepot's violation of the LO Comp Rule allowed it "to undercut WCL" on price, thereby "diverting would-be WCL borrowers from doing business with WCL." Opp. 17-18. But WCL does not plead any ***facts*** supporting this theory—not a single customer lost, no detail about the relevant "market," and no allegations concerning WCL's purported market share. Mot. 9-10. WCL's counterarguments do nothing to remedy this pleading failure.

***First***, WCL gets nowhere by citing the principle that economic injury is "the loss of money or property in 'any nontrivial amount,' oftentimes described as a 'trifle.'" Opp. 16 (citing *Kwikset*, 51 Cal. 4th at 324-25). All that means is a plaintiff need not allege a *significant* loss or provide a "specific measure of the amount" at the pleading stage. *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1088 (2023). But it does not eliminate the burden to allege a "specific[] . . . economic injury." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 964 (S.D. Cal. 2014). Indeed, in each case WCL cites, the plaintiff established economic injury by identifying a specific transaction or expenditure. *Kwikset*, 51 Cal. 4th at 319 (plaintiffs purchased product after seeing false advertisements); *Cal. Med. Ass'n*, 14 Cal. 5th at 1084 (plaintiff "diverted 200-250 hours of staff time" in response to unlawful practice); *Roberson v. Pocker*, 2024 WL 2984026, at *10 (C.D. Cal. Apr. 3, 2024) (defendant misappropriated specific confidential "pricing, rate sheets, and customer information"); *Howard v. Roman Catholic Archbishop of Los Angeles*, 2026 WL 222258, at *6 (Cal. Ct. App. Jan. 28, 2026) (plaintiffs paid specific contract fees); *Law Offices of Mathew Higbee v.*

*Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 561 (2013) (plaintiff was forced to increase specific advertising expenditures); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1070 (S.D. Cal. 2018) (plaintiff paid fees for specific cosmetic products). WCL, by contrast, does not identify a specific transaction, expenditure, or lost opportunity; it merely alleges that it suffered harm because loanDepot offered unspecified customers unspecified low prices. ¶¶41-43.

**Second,** WCL ignores the cases concluding that formulaic allegations of lost business opportunities and market share are typically insufficient to establish economic harm. Mot. 9-10. Instead, WCL erroneously relies (Opp. 17-18) on a handful of cases in which courts found lost market share plausible because the defendant offered an illegal product or service. *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) (defendant's product misappropriated intellectual property); *Higbee*, 214 Cal. App. 4th at 548 (defendant practiced law without a license); *Moement, Inc. v. Groomore, Inc.*, 2022 WL 18284405, at *11 (C.D. Cal. Nov. 29, 2022) (defendant developed product using stolen trade secrets); *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016) (defendant marketed product using plaintiff's proprietary information). Because those products and services should never have been on the market at all, the claims of lost market share were plausible. Here, by contrast, WCL speculates that it lost market share simply because loanDepot offered unspecified customers unspecified low prices. Tellingly, WCL does not cite a single case finding standing based on low prices—likely because such a holding would eviscerate the UCL's economic injury requirement and allow companies to sue every time a competitor cut its prices. *Cf. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 189 (1999) ("[F]irm[s]" may "cut prices in order to increase market share.").

**Finally,** WCL barely engages with the rule that a competitor's low prices cannot inflict UCL injury unless they are predatory below-cost prices. Mot. 10-11. WCL speculates that loanDepot would sometimes "offer non-profitable loans," Opp.

-3-

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

18, and offers two declarations stating that loanDepot employees were instructed to "match or beat" WCL's offers, Ex. E, ¶ 6; Ex. G, ¶ 6 (similar). But that is not enough—WCL must allege the price of the loans and the cost of offering the loans. *Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of San Francisco*, 114 Cal. App. 4th 309, 322 (2003). Recognizing that deficiency, WCL claims (Opp. 28) that it "need not prove . . . below-cost pricing." But that claim is contrary to established caselaw, which requires plaintiffs to allege below-cost pricing to plausibly plead competitive injury. *See Pac. Steel Grp. v. Com. Metals Co.*, 600 F. Supp. 3d 1056, 1080 n.10 (N.D. Cal. 2022) (collecting cases).

### B.    WCL Fails to Establish Causation

WCL asserts that there is a causal link between loanDepot's violation of the LO Comp Rule and WCL's loss of market share because "if loanDepot had complied with the LO Comp[] Rule, it would have been forced to incentivize loan officers to offer the best pricing upfront." Opp. 19. As a result, WCL claims, loanDepot was able to pursue a "two-track scheme": (1) demand "supra-competitive" prices from "less-informed borrowers," then (2) "selectively undercut the rivals it targeted." Opp. 20. But that convoluted theory—which is effectively a price-discrimination theory under antitrust law—has two fatal flaws.

***First***, the key premise is wrong: the LO Comp Rule does ***not*** require loanDepot to "offer the best pricing upfront." Instead, it prohibits loanDepot only from paying loan originators "compensation that varies based on the terms of the loan." 15 U.S.C. § 1639b(c)(1). Nothing in the LO Comp Rule prohibits loanDepot from charging any initial rate it wants, or from lowering that rate to match a competitor's offer. 12 C.F.R. 1026, Supp. I, Part 3, cmt. 36(e)(2)(ii). Accordingly, a mortgage lender can engage in the kind of pricing practice that WCL describes without violating the LO Comp Rule—it can simply direct loan originators to charge high rates and give discounts when necessary. So even if loanDepot engaged in the "two-track scheme" that WCL

describes (it did not), loanDepot's alleged violation of the LO Comp Rule did not cause WCL's supposed harm.

**Second**, the alleged "two-track scheme" could not have caused WCL to lose market share because loanDepot's alleged violation of the LO Comp Rule would have *raised* prices. Mot. 12. WCL insists that the "two tracks are not contradictory; they are complementary halves of one strategy that rule-compliant competitors cannot lawfully replicate." Opp. 20. Black-letter competition law directly refutes that argument. Price discrimination harms a competitor only when the defendant raises prices in a location where the competitor does not operate and lowers prices in the location where it does. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993). But "non-geographic price discrimination . . . does not present a . . . threat to competition" because a company cannot "subsidiz[e] price cuts" with "price hikes" in the same region—even if competitors cannot match the price cuts, they can undercut the price hikes. *Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 107 (3d Cir. 1992). WCL's theory collapses on itself: if loanDepot charged high baseline prices to most borrowers, WCL could have captured those borrowers. Thus, loanDepot's alleged violation of the LO Comp Rule could not have caused WCL to lose market share.

### C.    WCL Fails to Demonstrate a Risk of Imminent Future Harm

WCL lacks standing to seek "declaratory and injunctive relief" because it has failed to demonstrate "a real and immediate threat of repeated injury." *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022). WCL barely tries to satisfy this standard, asserting only that the declarations "describe[] recent and ongoing practices" and that the Complaint "alleg[es] 'ongoing' and 'continuing' unlawful practices and injuries." Opp. 21. But all of WCL's declarations are from

individuals who no longer work at loanDepot and either (1) never worked as production managers or (2) stopped working as production managers years ago.[2]

Thus, WCL at most describes loanDepot's past conduct. The law is clear that "[p]ast wrongs" are "insufficient by themselves to grant standing" to seek injunctive or declaratory relief, *Wright*, 48 F.4th at 1118, and courts routinely dismiss such requests where, as here, a plaintiff offers only a "conclusory assertion that [it] continue[s] to be threatened with loss or further damage," *Yoshimoto v. Alaska Airlines, Inc.*, 2026 WL 1121960, at *6 (D. Haw. Apr. 24, 2026).

Nor do WCL's declarations establish that it is likely to be harmed by loanDepot's conduct. Nothing in the declarations suggests that loanDepot has ever "targeted" a prospective WCL borrower, let alone in recent years. The only two declarants that even mention WCL left loanDepot in 2024 and stopped working as production managers in 2022. Ex. E, ¶ 6; Ex. G, ¶ 6. Even those declarants do not identify a single instance in which loanDepot won over a prospective WCL borrower—they simply state that they were instructed to "match or undercut" WCL.

It therefore makes no difference that loanDepot has not "suggest[ed] in any way that it intends to cease its unlawful practices." Opp. 21. The burden is on WCL to establish not only that loanDepot's practices were unlawful in the first place (they were not), but that they are continuing and threaten immediate harm. Declarations from employees who left years ago cannot satisfy that burden.

## II. WCL's UCL Arguments Fail

### A. The LO Comp Rule Precludes WCL's UCL Suit

The LO Comp Rule's limited private right of action is reserved for ***consumers*** impacted by non-compliance with the Rule, not competitors claiming lost market

---

[2] Ex. B, ¶ 1 (Ben Kelley no longer works at loanDepot and never worked as a production manager); Ex. C, ¶ 1 (Kyle Fleeger left in 2025 and stopped working as a production manager "several years ago"); Ex. D, ¶¶ 1-2 (Enrique Cotto left in January 2026 and never worked as a production manager); Ex. E, ¶ 1 (Kevin Wong left in 2024 and stopped working as a production manager in 2022); Ex. F, ¶ 1 (Shawn Way left in 2023 and stopped working as a production manager in 2022); Ex. G, ¶ 1 (David Harned left in 2024 and stopped working as a production manager in 2022).

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

share. 15 U.S.C. § 1640(a)(4); *Johnson v. LoanDepot.com, LLC*, 2026 WL 1529336, at *7 (D. Md. June 1, 2026) ("TILA confers a statutory right of action **only** on a borrower in a suit against the borrower's creditor."); *Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *2 (D. Ariz. Jan. 16, 2009) (same).[3] Against this backdrop, WCL "may not use the UCL to plead around an absolute bar to relief." *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 381 (2013); Mot. 14-16.

WCL tries to avoid this conclusion by arguing that "UCL claims may be predicated on TILA violations." Opp. 23-24. Yet none of the cases WCL cites involved the TILA provision at issue here: the LO Comp Rule. And in any event, three of the four cases involved consumer-plaintiffs who have the right to bring TILA claims. *Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 730 (2017) (consumer sued bank regarding loan modification); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1197 (9th Cir. 2010) (consumer sued bank regarding credit solicitation); *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008) (consumer sued mortgage lender regarding refinancing). The fourth is an insurance case that did not involve TILA at all. *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335 (2009).

This Court should decline WCL's invitation to use the UCL to transform the LO Comp Rule into a tool for litigating business disputes among competitors.

### B.    WCL Fails to Plead an Unlawful-Prong Claim

WCL's opposition confirms that it has failed to allege that loanDepot violated the LO Comp Rule. ***First***, WCL improperly conflates loan ***approval*** activity with loan ***origination*** activity. Opp. 6-8. The CFPB (the agency charged with implementing the LO Comp Rule) has made clear that the former—*i.e.*, "approving

---

[3] In *Johnson*, attorneys from the same firm who represent WCL here brought a (meritless) LO Comp Rule claim on behalf of borrowers based on a different legal theory and different alleged facts. But those attorneys withdrew after the court ruled that they had a conflict of interest from previously representing the loan officer who originated plaintiffs' loans in a different (failed) LO Comp Rule action against loanDepot. *Johnson*, 2026 WL 1529336, at *12.

the loan terms for consumers" is **not** loan origination activity: the term "loan originator does **not** include persons who . . . [a]pprove particular credit terms . . . in offer or counter-offer situations, provided that only a loan originator communicates to or with [the] consumer." 12 C.F.R. 1026, Supp. I, Part 3, cmt. 36(a)(4)(iv).

Tellingly, WCL obtained and relies heavily on declarations from four former production managers, yet not one demonstrates that production managers' activities fell outside of this protected approval activity. For instance, WCL highlights (Opp. 6) the declaration of former production manager David Harned, who explains that he was "presented with offers from competitors that were giving better rates to borrowers" and would have to decide whether to "sell the borrowers at the higher rate initially offered" or "approve the smallest pricing concession possible to get the borrower to move forward." Ex. G, ¶ 3. But Mr. Harned is careful not to state that he was personally responsible for communicating the approval decision to the consumer. The declarations of former production managers Kyle Fleeger, Ex. C, ¶ 2, Kevin Wong, Ex. E, ¶ 4, and Shawn Way, Ex. F, ¶ 3, are nearly identical.

Recognizing those deficiencies, WCL misleadingly quotes declarations from individuals who **never** worked as production managers. Most egregiously, WCL represents that Enrique Cotto "stated in his Declaration that he: regularly call[ed] customers to engage in second-level sales . . . negotiat[ing] rates, fees and terms of a loan, structur[ing] loans, and address[ing] problems that may require changes to a terms or conditions midstream." Opp. 6-7 (citing Ex. D, ¶ 3) (alterations in original). That summary is misleading in two ways. First, it omits that Mr. Cotto never served as a production manager, rendering those points irrelevant to this issue. Ex. D, ¶¶ 1-2. Second, Mr. Cotto does not state that *he* engaged in those activities—he states that he witnessed *other* unnamed employees engage in those activities. *Id.*, ¶ 3. His supposed secondhand observations cannot adequately plead that production managers originated loans.

-8-

**REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT**

***Second***, WCL does not dispute that it has failed to identify a single instance in which a production manager steered a borrower to a high-priced loan. That failure alone requires dismissal under both Rule 8 and Rule 9(b). Mot. 17.[4]

### C.    WCL Fails to Plead an Unfair-Prong Claim

WCL admits, as it must, that an unfair-prong claim requires conduct "that threatens an incipient violation" of an antitrust law "or violates the policy or spirit of" those laws. Opp. 27-28. Indeed, it accuses loanDepot of "predatory pricing" and claims that "loanDepot's actions are worse" than Standard Oil's. Opp. 13.

Yet WCL falters on substance. Instead of attempting to explain why loanDepot's actions violate antitrust principles, WCL insists that it need not allege the basic elements of an antitrust claim, like "monopoly power" or "below-cost pricing." Opp. 27-28. But California courts have long held that "conduct alleged to be unfair because it unreasonably restrains competition . . . is not unfair if the conduct is deemed reasonable and condoned under the antitrust laws." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001). WCL must at least *try* to explain why loanDepot's conduct resembles a recognized antitrust violation. Its failure to do so— or to cite even *one* source to support its argument—requires dismissal.

Regardless, loanDepot's alleged conduct does not threaten an antitrust violation. As discussed, WCL's theory is that loanDepot engaged in a form of price discrimination. *See* Section I.B, *supra*. But price discrimination is anticompetitive

---

[4] WCL insists (Opp. 29-30) that Rule 9(b) does not apply because courts have generally declined to apply it to TILA claims. But Rule 9(b) applies to all claims that sound in fraud, and courts have concluded that TILA claims sounding in fraud are subject to Rule 9(b). *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003); *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1185 (D. Minn. 1999). Because WCL alleges that loanDepot made misleading half-truths, Rule 9(b) applies here. Mot. 7-8. The decades-old caselaw cited by WCL does not compel a different result. *See Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578 (D. Md. 2001) (no party argued for application of Rule 9(b)); *Swanagan v. Al Piemonte Ford Sales, Inc.*, 1995 WL 493480 (N.D. Ill. Aug. 15, 1995) (same); *Levitan v. McCoy*, 2001 WL 1117279 (N.D. Ill. Sept. 21, 2001) (finding claims did not sound in fraud but not that a TILA claim can never sound in fraud); *Maxwell v. Union Fid. Mortg., Inc.*, 2009 WL 426189 (E.D. Cal. Feb. 19, 2009) (failing to analyze whether claims sounded in fraud).

**REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT**

only when "the prices complained of are below an appropriate measure of [a] rival's costs." *Brooke Grp. Ltd.*, 509 U.S. at 222; Mot. 18. Otherwise, price discrimination is just a strategy to attract price-sensitive customers. And as the country's leading competition scholars put it fifty years ago: "we are unable to see a persuasive case for prohibiting selective price-cutting to retain or obtain particular customers." Phillip Areeda & Donald Turner, *Predatory Pricing and Related Practices Under Section 2 of the Sherman Act*, 88 Harv. L. Rev. 697, 725 (1975). Thus, even if selective price-cutting by itself violated the LO Comp Rule (it does not), it does not violate the UCL.

## III.   WCL Drops Its Standalone Declaratory Judgment Claim

WCL has abandoned its standalone declaratory judgment claim, ¶¶ 54-61, and now seeks "declaratory relief" only with respect to its "UCL claim," Opp. 28. That makes sense because WCL cannot seek a declaratory judgment regarding TILA. Mot. 19-20. However, even WCL's re-styled request for declaratory relief must be dismissed—there is no immediate or imminent threat of harm. *See* Section I.C, *supra*.

## CONCLUSION

For the foregoing reasons, WCL's Complaint should be dismissed with prejudice. WCL's conclusory arguments regarding standing demonstrate that it will not be able to provide this Court with sufficient details to establish injury or causation—especially not going forward. If WCL could identify a single customer it lost or is likely to lose, it would have done so already. Similarly, there is nothing WCL can do to show that production managers are loan originators in disguise. Nor will WCL be able to establish below-cost pricing, or even explain what that means in the context of mortgage lending.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Dated:      July 16, 2026            COOLEY LLP


By: */s/ Alexandra R. Mayhugh*
    Alexandra R. Mayhugh

*Counsel for Defendant*
*loanDepot.com, LLC*

-11-

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for loanDepot.com, LLC, certifies that this brief contains 3,499 words, which complies with the word limit of L.R. 11-6.1.

Dated:         July 16, 2026            COOLEY LLP


                                        By: */s/ Alexandra R. Mayhugh*
                                            Alexandra R. Mayhugh

                                        *Counsel for Defendant*
                                        *loanDepot.com, LLC*

-12-                    REPLY IN SUPPORT OF MOTION TO
                        DISMISS COMPLAINT